IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:09CR125 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| JARED MASON, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Jared Mason (Mason) (Filing No. 20). Mason along with co-defendant Donnell Smith is charged in the Indictment with robbery of the Florence Post Office in Omaha, Nebraska, on April 20, 2009, in violation of 18 U.S.C. §§ 2112 and 2 (Count I) and with brandishing a firearm during the robbery in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count II). Mason is also charged with the possession of a firearm on April 20, 2009, after having been convicted of a felony in violation of 18 U.S.C. § 922(g) (Count III) and with a criminal forfeiture count in violation of 18 U.S.C. 924(d) (Count IV). Mason seeks to suppress evidence seized by officers of the Omaha Police Department (OPD) from a residence at 6730 North Ridge Drive, Omaha, Nebraska, on April 20, 2009.

The court held hearings on the motion on June 3 and 16, 2009. Mason was present for the hearings along with his counsel, Assistant Federal Public Defender Julie B. Hansen. The United States was represented by Assistant U.S. Attorney Sandra L. Denton. During the hearings, the court heard the testimony of OPD Officers Jeffrey Gassaway (Officer Gassaway) and Kerry Morfeld (Officer Morfeld), and OPD Detective Matt Chandler (Detective Chandler). The court also received into evidence a copy of an OPD Permission to Search form (Exhibit 1), an OPD Rights Advisory Form (Exhibit 2), a photograph of the exterior of the house at 6730 North Ridge Drive (Exhibit 3), and a photograph of the basement area of the house. A transcript (TR.) of the hearings was filed on June 19, 2009 (Filing No. 31).

## FINDINGS OF FACT

On April 20, 2009, Officer Gassaway was on duty with the Metro Area Fugitive Task Force and was in the Northeast Precinct where he was conducting research and surveillance for an ongoing fugitive case (TR. 4-5).  At approximately 10:45 a.m., Officer Gassaway received a radio dispatch that the Florence Station U.S. Post Office had been robbed and the getaway vehicle with license plates of GUB 225 was registered to a person at 6730 North Ridge Drive in Omaha (TR. 5-6).  Officer Gassaway responded to the call and arrived at 6730 North Ridge Drive along with other uniformed OPD officers (TR. 6).  The suspect vehicle, a black minivan, was in the driveway of the residence (TR. 5-6).  The officers set up a perimeter around the house (TR. 6).  Officer Gassaway noticed that people were peeking out a window in the basement and in the upstairs portion of the residence (TR. 7).  After the perimeter was established and the precinct commander, Captain Carmody, arrived on the scene, telephone contact was made with Hattie Mason inside the residence (TR. 7).  Ms. Mason was the registered owner of the minivan and the residence (TR. 6-7).  Ms. Mason informed Captain Carmody that people would be coming out of the house (TR. 7).  Shortly thereafter, Ms. Mason and two other females walked out of the house to Officer Gassaway's vehicle (TR. 8).  Ms. Mason told Officer Gassaway that her son Jared and his friend Donnell (Smith) were still in the house in the basement (TR. 8).  Ms. Mason was asked for permission to search the house and the vehicle in the driveway (TR. 9 -11).  Ms. Mason agreed and signed a permission to search form for the house and vehicle (TR. 10 -11; Exhibit 1).

Eventually Captain Carmody made contact with Mason through a cell phone by leaving a voice mail message informing Mason of the situation and directing them to come out of the house (TR. 12).  Eventually, after approximately ninety minutes, Mason and Smith came out of the house and were arrested (TR. 13).  Mason was not asked for permission to search the residence (TR. 14).

Officer Morfeld was assigned to the robbery unit of the Criminal Investigations Unit on April 20, 2009 (TR. 17).  He assisted in the investigation of the post office robbery and spoke to Ms. Mason while she was in Officer Gassaway's vehicle outside 6730 North Ridge Drive (TR. 17).  Ms. Mason told Officer Morfeld she had been in the house drawing a bath

for herself when she heard yelling and screaming that the police were outside (TR. 18). Ms. Mason told Officer Morfeld she was asked to leave the house which she did with her daughter and granddaughter (TR. 18). Ms. Mason told Officer Morfeld that her son Jared was in the house with his friend, Donnell (TR. 18). When asked by Officer Morfeld whether Jared stayed at the house, Ms. Mason stated Jared had just been released from the penitentiary on March 23rd and he had been living with her other son, Tyrone, at 5008 Spaulding in Omaha (TR. 19). When asked if Jared had spent the night at the residence, Ms. Mason stated Jared had arrived at 6 a.m. the morning of April 20, 2009 (TR. 19). Ms. Mason stated she was surprised since Jared does not come to her house that early as Tyrone usually brings Jared over to her house on Mondays to borrow her van so that Jared can visit his parole officer (TR. 19). Ms. Mason told Officer Morfeld that Jared had taken her van earlier that morning and had returned about fifteen minutes before the police arrived (TR. 20). Ms. Mason told Officer Morfeld the bedroom in the basement was that of her granddaughter, Darecia, and where Darecia slept (TR. 26).

Later that day after Jared Mason was taken into custody, Officer Morfeld interviewed Mason in an interview room at Central Police Headquarters (TR. 21-22). Mason was advised of his ***Miranda*** rights by Officer Morfeld, who used an OPD Rights Advisory Form (TR. 23; Exhibit 2). Mason stated he understood his rights and agreed to talk with Officer Morfeld (TR. 23). Mason appeared to understand the advice, did not appear to be under the influence of any substance and was not promised anything to speak with Officer Morfeld nor was Mason coerced or threatened (TR. 23-24). Mason did not request an attorney and only asked to stop the interview after being asked for buccal swabs, whereupon the interview ended (TR. 25). During the interview, Mason told Officer Morfeld that he (Mason) was residing with his brother at 5008 Spaulding and never claimed to reside at 6730 North Ridge Drive (TR. 25-26).

Detective Chandler and OPD Sergeant Ratliff were part of the police perimeter team at 6730 North Ridge on April 20, 2009 (TR. 34). After Mason and Smith came out of the residence and surrendered to the police, Detective Chandler was part of a search team that entered the residence and conducted a search of the residence (TR. 35). Later in the day, Detective Chandler assisted in the interview of Smith at Central Police Headquarters (TR.

35).  In that interview, Detective Chandler found out that evidence remained in the residence which was not discovered by the initial searching team (TR. 35).  Detective Chandler contacted Ms. Mason by telephone and told her there was additional evidence in the house and the officers would like to come back and get it (TR. 37).  Ms. Mason said that would be fine (TR. 37).  When Detective Chandler arrived at the house, he explained to Ms. Mason that the officers learned there was rifle which was used in the robbery hidden in a laundry room downstairs in the residence (TR. 37).  Ms Mason asked the officers to go and get the firearm and make sure there were no other firearms in the house (TR. 38).  The rifle was found within minutes hidden behind a door in the laundry room (TR. 38).  The laundry room was next to the granddaughter's bedroom (TR. 41).  The laundry room was not connected to the bedroom nor to the common space in the basement except by a door (TR. 41).  There were some chairs and a sofa in the common space in the basement (TR. 42).  Detective Chandler testified Mason's driver's license was issued on March 25, 2009, and listed his address as 5008 Spaulding in Omaha, Nebraska (TR. 44).

Mason's consent to search the premises at 6730 North Ridge Drive was neither sought not obtained.

## CONCLUSIONS OF LAW

### 1.  Standing

To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.  **Minnesota v. Carter**, 525 U.S. 83, 88 (1998); **United States v. Boyster**, 436 F.3d 986, 992 (8th Cir. 2006).  The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." **Rakas v. Illinois**, 439 U.S. 128, 143-44 n.12 (1978); **see also Smith v. Maryland**, 442 U.S. 735, 740-41 (1979).  "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally."  **United States v. Barragan**, 379 F.3d 524, 529-30 (8th Cir. 2004) (**quoting United States v. Gomez**, 16 F.3d 254, 256 (8th Cir. 1994)).

> The Eighth Circuit has recognized that:
>> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized. A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*United States v. Stallings*, 28 F.3d 58, 60 (8th Cir. 1994) (internal citations omitted). "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Barragan*, 379 F.3d at 529. Therefore, the court "must first determine whether [the defendant] had a legitimate expectation of privacy in the area searched or the item seized." *Gomez*, 16 F.3d at 256. The Eighth Circuit has explained:

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*Id.* Additionally, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Carter*, 525 U.S. at 90 (internal citations omitted).

In this case, Mason did not stay or reside at his mother's residence. In fact, Ms. Mason stated that Mason arrived on the morning of April 20, 2009, in order to borrow her van. Mason and Ms. Mason both told the police officers Mason resided at 5008 Spaulding in Omaha with his brother and neither claimed Mason resided at 6730 North Ridge Drive. Further, Mason listed 5008 Spaulding as his address on his driver's license obtained a month before on March 25, 2009. If Mason did occasionally sleep on the couch in the basement, there was no evidence of the same. Even if such were the case, such minimal contact would not provide him standing to object to the search of the premises when he was not staying there the night before the search.

### 2. Consent to Search

Even if Mason had standing to object to the search of 6730 North Ridge Drive, Ms. Mason, the owner of the property, gave her consent to search. In fact, with regard to the second search, Ms. Mason pleaded with the officers to make sure there were no other firearms in the house. "In order for a consensual search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent) authority to do so." **United States v. Williams**, 521 F.3d 902, 906 (8th Cir. 2008). The government bears the burden of proving voluntary consent to search by a preponderance of evidence. **United States v. Esquivel**, 507 F.3d 1154, 1159-60 (8th Cir. 2007). In this case, the government has met that burden. Ms. Mason gave her written and oral consent to search the premises. Furthermore, Mason, at no time, asserted an interest in the premises or objected to the search of the premises.

### 3. Statement

Mason also seeks to suppress his statements provided at Central Police Headquarters as set forth in his oral motion made at the time of the evidentiary hearing.

The touchstone for the admissibility of a defendant's statements is voluntariness. **Brown v. Mississippi**, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. **Mincey v. Arizona**, 437 U.S. 385 (1978); **Colorado v. Connelly**, 479 U.S. 157 (1986); **Schneckloth v. Bustamonte**, 412 U.S. 218 (1973). In this case, Mason was advised of his constitutional rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966). There is no evidence Mason did not understand the advice of rights.

The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. **Schneckloth**, 412 U.S. at 225-26. Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights. **Connelly**, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police

officer, while uncomfortable, is not coercive *per se*.  **See *Oregon v. Mathiason***, 429 U.S. 492, 495 (1977).

In this case, there is no evidence that coercive police tactics were used.  The evidence establishes Mason's statements were entirely voluntary and made after a full ***Miranda*** advice.  Mason's motion to suppress his statements should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Mason's motion to suppress (Filing No. 20) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 17th day of July, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge